**In the Matter of Melvin D. SAVAGE Jr.,
aka M. D. Savage, Jr., and Marguerite
L. Savage, Bankrupts.**

**Nos. 58194, 58195.**

United States District Court,
C. D. California.

May 17, 1971.

Robert L. Meyer, U. S. Atty., Charles H. Magnuson, Asst. U. S. Atty., Chief, Tax Div., Los Angeles, Cal., for petitioner, U. S. A.

Danning & Gill, J. L. Michaelson, Sherman Oaks, Cal., for respondent Bankrupts.

## MEMORANDUM AND ORDER ON REVIEW

WESTOVER, District Judge.

This matter came on for hearing of the Government's Petition for Review. After hearing, in the preparation of this Memorandum and Order on Review, the Court found it was without adequate information concerning certain transactions and dates giving rise to the issues herein to be resolved and requested that pertinent information be furnished. Pursuant to that request "Addition to Appendix to Memorandum of Points and Authorities Filed by United States of America on January 4, 1971" was filed with the Clerk of Court on March 30, 1971, and on May 5, 1971 "Second Addition to Appendix to Memorandum of Points and Authorities * * *" was filed with the Clerk. Counsel for bankrupts was duly served with copies; and the items received on March 30, 1971 and May 5, 1971 have been received as evidence in this cause, no objection thereto being made by Bankrupts' counsel.

On July 17, 1969 the above-named bankrupts filed voluntary petitions in bankruptcy, listing among their obligations unpaid income taxes, with penalty and interest thereon, owing to the Internal Revenue Service for the years 1960, 1961 and 1962 in a total amount in excess of $222,000.

In 1963 the Internal Revenue Service made jeopardy assessments against Mr.

and Mrs. Savage for the 1960 and 1961 tax. In 1966 assessment was made against Melvin D. Savage, Jr., for the 1962 tax. In 1963 Melvin D. Savage, Jr. had filed a petition in bankruptcy and had listed as an obligation moneys owing to the United States of America for income taxes, penalties and interest, for the years 1960, 1961 and 1962—the same obligations which are herein sought to be discharged. In 1963 Melvin D. Savage, Jr. received an unconditional discharge in bankruptcy:

In the current, 1969, bankruptcy proceedings the Internal Revenue Service, although on notice of the bankruptcy filing, did not file proof of claim. By letter dated September 10, 1969 the Internal Revenue Service threatened to seize bankrupts' wages or other assets exempt in bankruptcy or after-acquired, unless the bankrupts presented an acceptable program for liquidation of the aforementioned tax obligations.

On September 25, 1969 the bankruptcy court entered its order discharging the bankrupts from all obligations provable against their estates, excepting therefrom only such debts as are by law excepted from discharge in bankruptcy; and the bankrupts thereupon filed application to determine dischargeability of the tax indebtedness and to restrain collection thereof as threatened in the letter of September 10, 1969.

## JURISDICTION OF BANK-RUPTCY COURT

At the hearing of bankrupts' application before the bankruptcy court the Government first contended that the bankruptcy court did not have jurisdiction over the United States of America to determine the issue of the tax liability because proof of the Government's claim had not been filed in the bankruptcy proceedings.

On this aspect of jurisdiction a judge of this United States District Court has spoken—In re Braund, 289 F.Supp. 604 (5 ALR Fed. 997). Honorable Irving Hill of this court states the following, at page 606:

" * * *. Local Loan Co. v. Hunt, 292 U.S. 234, [54 S.Ct. 695, 78 L.Ed. 1230] * * * enunciates the principle that the bankruptcy court retains jurisdiction to interpret and vindicate its order of discharge. Included within such jurisdiction is the right of the bankrupt to obtain a declaration that a pre-bankruptcy creditor is not entitled to pursue assets acquired by the bankrupt after discharge. As *Local Loan* points out, such jurisdiction is necessary to achieve the essential purpose of the Bankruptcy Act, * * *."

On appeal In re Braund was affirmed—423 F.2d 718.

In re Michaud [W.D. Penna.] 317 F. Supp. 1002, contains the following language, page 1008:

"The identical objection to jurisdiction was raised in In re Braund before the district court. The district court found jurisdiction under Local Loan Co. v. Hunt, * * * where it was held that "the exercise of such jurisdiction is necessary to achieve the essential purpose of the Bankruptcy Act, a fresh start. * * *.

" * * * it is plain that in amending Sec. 17 of the Bankruptcy Act the purpose of Congress was to enhance the individual's opportunity to financially rehabilitate himself in bankruptcy, by eliminating his old tax debts."

## AFTER-ACQUIRED ASSETS

In this Savage bankruptcy the Government further contends that even though the bankruptcy court had jurisdiction, the tax *liens* were not discharged in bankruptcy and, therefore, the Government has the right to pursue after-acquired assets to satisfy the claims.

Title II, United States Code, § 35 provides:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as (1) are taxes which became legally due and owing by the bankrupt to the United

States * * * within three years preceding bankruptcy; Provided, however, That a discharge in bankruptcy shall not release a bankrupt from any taxes (a) which were not assessed * * *."

The Referee found that bankrupts listed among their creditors the Internal Revenue Service for the obligation owing for unpaid income taxes, penalties and interest thereon, for the years 1960, 1961 and 1962, in the approximate sum of $222,319.45 and that the bankrupts' tax returns for the years 1960, 1961 and 1962 were timely filed.

■ The Referee also found that the tax claims of the United States for federal income tax and penalties and interest for the years 1960, 1961 and 1962 were discharged in full by reason of the discharge in bankruptcy. And the Referee found further that the tax assessments acquired by the United States of America against the bankrupts and the tax liens filed pursuant to said assessments prior to the commencement of the bankruptcy proceedings were valid, which gave the United States of America liens aganist whatever property the bankrupts then had but that the tax liens did not attach to any property of the bankrupts acquired or earned subsequent to July 17, 1969.

Judge Hill said in Braund, supra, 289 F.Supp. at page 607:

"Both sides concede that the tax liabilities involved in this case are for taxes 'which became legally due and owing' more than 'three years preceding bankruptcy.' Both sides apparently concede that if there had been no lien noticed for these taxes up to the time of bankruptcy, the liability would have been wiped out to the extent the taxes were unpaid at that time. But a lien had been noticed. The problem thus resolves itself to one essential question: Is the effect of the second proviso which states that a discharge in bankruptcy shall not 'release or affect' any tax lien, such that the instant lien continued to be effective after "the bankruptcy discharge with the ability to attach itself to after-acquired property?

"* * *

"The government contends that the statute should be construed to limit its rehabilitative benefits to cases where the older tax liabilities have not been made the subject of a noticed lien. Once a lien has been noticed, the government reasons, the statute says that the lien is not 'affected' by the discharge, which means that the lien must continue to have the power to pick up after-acquired property. * *

"* * *. It seems clear to me that the second proviso is inserted so as to make clear that where a lien had attached to certain property at the time of the bankruptcy, the government could go ahead and realize on that lien and apply the proceeds of that property to the unpaid taxes despite the earlier language that a discharge in bankruptcy 'shall release' the bankrupt from the tax liability in question. * * *. But if the tax liability is not paid in full by the proceeds of such property, the remainder of the tax liability is 'released' and no after-acquired property can be subjected to any lien because the lien died with the release of the underlying obligation."

Judge Andrew A. Hauk of this court in In re Carlson, 292 F.Supp. 778 said, at 780:

"There is no question, and all parties to the controversy agree, that the tax in question became due and owing more than three years before the commencement of the bankruptcy proceeding and apparently, it would be admitted by the Appellant that the bankrupt would be entitled to a discharge of those particular tax claims, relying upon the last clause of the amended statute set forth above and in particular which states as follows: 'A discharge in bankruptcy shall not release or affect any tax lien.' * * *. The Bankrupt, on the other hand, takes the position that that tax lien is to apply only to property belonging to him as of the date of the filing of the Petition in Bankruptcy, and that the

lien does not survive to encompass after-acquired property. * * *.

" * * *. Briefly, that Amendment provides that all taxes which were legally due and owing more than three years before bankruptcy are discharged by the bankruptcy proceedings.

" * * *. The meaning of the statute is plain: taxes (with the exceptions as noted above) [exceptions not pertinent in this instant review] over three years old are discharged whether a lien has been filed or not. However, the lien itself remains unaffected, that is, the Board has a lien upon "the property of the bankrupt which was owned at the time of the filing of the Petition in Bankruptcy. Any other construction of the statute requires reading into [it] words which do not appear on its face."

And Judge Hauk made the following Order:

"It is further ordered that the Bankrupt having received his discharge in bankruptcy, the State Board of Equalization, its agents, servants and employees and any person seeking to act for and on behalf of the State Board of Equalization be, and each of them are, hereby permanently restrained and enjoined from taking any action to collect said tax."

As said by the United States Court of Appeals for the Ninth Circuit in the Braund case, 423 F.2d 718:

"The only substantial question presented is whether the provision in section 17a (1) of the Bankruptcy Act, 11 U.S.C. § 35(a), preserves a pre-bankruptcy tax lien as to assets acquired after bankruptcy. The three district courts which have considered this question have answered it in the negative. [Citations].

"There are substantial arguments on both sides, but we have concluded that on balance the result reached in these decisions is the better one."

The Referee's Findings as to jurisdiction and after-acquired property are, in view of the foregoing, affirmed; but this Court does not agree with the Referee's finding as to just which taxes were discharged in bankruptcy.

## ASSESSMENT OF DEFICIENCY— TAX COURT PETITION

On April 14, 1966 the Internal Revenue Service mailed to Marguerite Savage its customary "90-Day Letter" which stated, in part, as follows:

" * * * the determination of your income tax liability for the taxable year ended December 31, 1962, discloses a deficiency in the amount of $123,964.73, plus a penalty of $6,198.-24 asserted under the provisions of section 6653(a) of the Internal Revenue Code.

"* * *.

"If you do not intend to contest this determination in the Tax Court of the United States, please sign the enclosed Waiver, Form 870, and return it promptly in the enclosed envelope. This will permit early assessment of the deficiency or deficiencies and limit accumulation of interest.

"If you do not sign and return the Waiver, the deficiency or deficiencies will be assessed for collection, as required by law, upon the expiration of 90 days * * * from the date of this letter, unless within that time you contest this determination in the Tax Court of the United States by filing "a petition with that Court in accordance with its rules. * * *."

Marguerite Savage, on June 30, 1966, elected to file her Petition in the Tax Court of the United States, Docket No. 3677–66, which petition is still pending in that court. In her petition Marguerite Savage prays that the court

" * * * determine that there is no deficiency in income tax or penalty due from petitioner for the calendar year 1962 * * *."

Three years and two weeks later— July 17, 1969—Melvin D., also known as M. D. Savage, Jr., and Marguerite L. Savage, filed with the Bankruptcy Court the within bankruptcy proceedings. On

September 25, 1969 they were discharged in bankruptcy.

As stated in § 35, Title 11, United States Code:

" * * * a discharge in bankruptcy shall not release a bankrupt from any taxes (a) which were not assessed * * *."

As to the 1962 tax liability Melvin D. Savage did not file a Petition in the Tax Court; his tax liability was assessed. Marguerite Savage did file a Petition in the Tax Court. Her 1962 taxes have not been assessed.

*Liens* were inadvertently filed of record in the names of Mr. and Mrs. Savage jointly but, as shown on the "Certificate of Release of Federal Tax Lien" on file in the bankruptcy proceedings.

"This Certificate releases Marguerite Savage from the specific liability described above which is erroneously included in Notice of Federal Tax Lien recorded February 3, 1969 * * for the reason that the name of said Marguerite Savage *was not included on the original assessment list.*"

Emphasis supplied

■ *Assessment* could not validly be made against Marguerite Savage, pending determination of the 1962 tax liability in the Tax Court of the United States; hence *liens* filed against her in the absence of the assessment were without force and effect and had to be removed of record.

The Referee found:

"7. Notwithstanding that the Bankrupt MARGUERITE L. SAVAGE had pending on the date this proceeding was filed a petition for redetermination of asserted deficiencies for the year 1962, Section 17a 1 (c) of the Bankruptcy Act is inapplicable by reason of the fact that the INTERNAL REVENUE SERVICE assessed and filed a lien against said Bankrupt for said year prior to the commencement of this proceeding."

The foregoing Finding is erroneous. A *lien* was inadvertently placed of record in the joint names of Mr. and Mrs. Savage, which lien was thereafter released as to Marguerite Savage because of her petition pending in the Tax Court. No *assessment* against Marguerite Savage was possible, for the pending Tax Court petition to ascertain the tax liability prevented assessment. The Referee was misled by a "Stipulation of Facts and Presentation of Issue for Consideration" presented by counsel, which stipulation stated:

"3. On April 8, 1966, an assessment for 1962 was made against Melvin D. Savage, Jr., by the Internal Revenue Service. * * *.

"* * *.

"4. The assessment described in paragraph 3 above took the form of a joint assessment against Melvin D. Savage, Jr. and Marguerite L. Savage. Notices of federal tax lien were recorded in San Francisco County and San Mateo County on September 27, 1968 and in Ventura County on February 3, 1969. These three recordations indicated that there was a lien against both Melvin D. Savage, Jr. and Marguerite L. Savage."

The foregoing Stipulation of Fact is erroneous and misleading in its statement that "joint assessment" had been made to include Marguerite L. Savage. No assessment of 1962 tax had been made in her name; the petition in the Tax Court prevented assessment. Recordation of joint lien in the counties listed was in error, and steps were properly taken to release the lien and correct the error of recordation. No assessment of tax to be paid by Marguerite Savage for the year 1962 could be made, for the amount due from her for that year awaited Tax Court determination.

It is ordered that the Referee is affirmed in his Findings of Fact except as to Finding 7 in which he found assessment had been made for the 1962 taxes due from Marguerite L. Savage and, therefore, that § 17a 1 (c) of the Bankruptcy Act was inapplicable as to the 1962 tax.