**In re HOLYWELL CORPORATION, Miami Center Limited Partnership, Miami Center Corporation, Chopin Associates and Theodore B. Gould, Debtors.**

**Fred Stanton SMITH, as Trustee of the Miami Center Liquidating Trust, Plaintiff,**

**v.**

**The UNITED STATES of America, the Bank of New York, Miami Center Limited Partnership, Miami Center Corporation, Chopin Associates, Holywell Corporation and Theodore B. Gould, Defendants.**

Bankruptcy Nos. 84–01590–BKC–SMW to 84–01594–BKC–SMW.
Adv. No. 87–0627–BKC–SMW–A.

United States Bankruptcy Court,
S.D. Florida.

April 28, 1988.

---

Herbert Stettin, Miami, Fla., for trustee.

Frank DeLeon, Trial Atty., Tax Div. U.S. Dept. of Justice, Washington, D.C., for U.S.

Robert A. Mark, Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Miami, Fla., Robert Musselman, Charlottesville, Va., for debtor.

Theodore B. Gould, pro se.

Vance Salter, Coll Davidson Carter Smith Salter & Barkett, P.A., S. Harvey Ziegler, Miami, Fla., for Bank of New York.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on before the Court upon the Complaint of the liquidating trustee of the Miami Center Liquidating Trust (the "trust") against the United States of America (the "government"), the Bank of New York (the "bank"), Theodore Gould ("Gould"), Miami Center Limited Partnership, Miami Center Corporation, Chopin Associates and Holywell Corporation (the "debtors") for a declaration of the responsibility of the trust to file and/or pay federal income taxes to the government upon gain realized from the sale of real estate and the Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel and being otherwise fully advised in the premises does hereby make the following Findings of Facts and Conclusions of Law:

The facts are not in serious dispute. The debtors filed voluntary chapter 11 petitions on August 22, 1984, and the cases were substantively consolidated for all purposes. Shortly after the commencement of the chapter 11 proceedings, the debtors moved the Court for an order authorizing consummation of a prepetition contract for the sale of real estate in Washington (the "Washington properties"). Pursuant to order of this Court, the sale closed in December, 1984 and January, 1985, with the net proceeds due to Gould, Holywell, and Twin Development Corporation, a wholly owned non-filed subsidiary of Holywell, being placed in controlled accounts. The Court determined the proceeds of the sale were subject to the bank's lien, and entered a cash collateral order.

Thereafter, both the debtors and the bank proposed plans of reorganization which utilized the proceeds from the preconfirmation sale of the Washington prop-

erties and the post-confirmation sale of another parcel of real estate (the "Miami Center") as the sources of funds for payment of creditors. However, neither plan expressly provided for the payment of federal income taxes, if any, due on gain realized from those sales. The bank's Amended Consolidated Plan of Reorganization (the "plan") was confirmed on August 8, 1985, and became effective on October 10, 1985, after the debtors failed to supersede the order of confirmation. The confirmation order was affirmed by the district court, 59 B.R. 340 (S.D.Fla.1986), and the 11th Circuit Court of Appeals dismissed an appeal of the order as moot because the plan was substantially consummated. *Miami Center Limited Partnership v. Bank of New York,* 838 F.2d 1547 (11th Cir.1988).

The confirmed plan creates a trust and requires that a liquidating trustee be appointed whose responsibilities include the identification and payment of all valid claims against the estate with the payment of the sum remaining to the debtors. The trust corpus consists of all the debtors' 11 U.S.C. Section 541(a) defined assets (including the stock of all the wholly-owned subsidiaries), and the Washington proceeds. Soon after the liquidating trustee took control of the trust, he sold the Miami Center to the bank's nominee and the proceeds became a part of the trust corpus.

The government was listed as a creditor. It was involved in other tax disputes with the debtors and had notice of the bankruptcy proceedings. The government received copies of the competing plans and disclosure statements; had an opportunity to object and be heard on the terms proposed in the plans; and to appeal from the order of confirmation which contained no provision for payment of capital gain taxes. The government did none of these things.

As conceded by the government and the debtors, the trust is not a separate taxable entity. However, the government and the debtors argue that the trust is responsible for filing an income tax return on behalf of the debtors and to pay the tax due, pursuant to 26 U.S.C. §§ 6012(b)(3), (b)(4), and 6151. The government supports this posi-

tion by arguing that the liquidating trustee is a "trustee in a case under title 11 of the United States Code, or assignee ...," under 26 U.S.C. § 6012(b)(3), thereby subjecting the trust to liability for taxes. The government also argues that the trust is responsible for taxes under 26 U.S.C. § 6012(b)(4) because it is "a trust, or an estate of an individual under Chapter 7 or title 11 of the United States Code [and payment] shall be made by the fiduciary thereof." 26 U.S.C. § 6012(b)(4) (bracketed material added). Both the government and the debtors principally rely upon *In the Matter of I.J. Knight Realty Corp.,* 501 F.2d 62 (3d Cir.1974) to support their argument that the trust is responsible for these taxes.

The liquidating trustee argues that 26 U.S.C. § 6012(b)(3), (b)(4) and *I.J. Knight,* 501 F.2d 62 are not applicable because the liquidating trustee in the case *sub judice* is not a trustee in a case under title 11 of the United States Code. The liquidating trustee also argues that 26 U.S.C. §§ 6012(b)(3) and (b)(4) are not applicable because the trust is a grantor trust, as defined under Subpart E of Subchapter J of the Internal Revenue Code, 26 U.S.C. §§ 671–79 and as such the trust is not a taxable entity under the Internal Revenue Code. The liquidating trustee cites *In re Sonner,* 53 B.R. 859 (Bankr.E.D.Va.1985), as support for his position that the trust is a grantor trust and therefore not responsible for filing tax returns or paying federal income taxes due, if any, on the sale of either the Miami Center or the Washington properties.

■ The *I.J. Knight* court found that a non-operating trustee appointed under Title 11 of the Bankruptcy Code was "liable for payment of federal taxes on income generated during liquidation and distribution of the bankrupt estate" pursuant to 26 U.S.C. § 6012(b)(3). *I.J. Knight,* 501 F.2d at 62. The reliance on *I.J. Knight* by the debtors and the government is misplaced for the Court finds that the liquidating trustee is not a trustee appointed in a case under title 11. The liquidating trustee was appointed by the court as part of a confirmed plan of reorganization and his actions are limited

to the powers granted to him in the plan and the order of confirmation. The plan created the trust solely to pay the debtors' indebtedness in a manner specified by the plan. Once that function is served, the liquidating trustee and the trust will cease to exist. Therefore the Court finds that the liquidating trustee, being a creature of a contract, is a contract trustee.

It is well-settled that tax statutes are "not to be extended by implication beyond the clear import of the language used and, in case of doubt, are construed most strongly against the government." *Greyhound Corporation v. United States*, 495 F.2d 863 (9th Cir.1974). The obvious reasoning for this rule of construction is that the power to tax is the power to destroy, and "Congress could very easily have manifested any other intent by a limiting or qualifying provision." *Frankel v. United States*, 192 F.Supp. 776 (D.Minn.1961), affirmed, 302 F.2d 666 (8th Cir.1962), cert. denied, 371 U.S. 903, 83 S.Ct. 208, 9 L.Ed. 2d 165 (1962). Therefore the Court finds that the liquidating trustee is not liable for payment of federal taxes, if any are due, under 26 U.S.C. § 6012(b)(3) since by its language it applies only to a trustee in a case under title 11.

■ Furthermore, the Court finds that the liquidating trustee is not an assignee within the meaning of 26 U.S.C. § 6012(b)(3) or a fiduciary under 26 U.S.C. § 6012(b)(4). The liquidating trustee's duties and powers under the plan are limited. The liquidating trustee does not possess discretionary authority as to the disposition of plan's assets. The liquidating trustee is merely charged with the responsibility of identifying, quantifying and paying allowed claims through the disbursement of the trust assets in accordance with the terms of the confirmed plan. The liquidating trustee's functions are more closely analogous to those of a disbursing agent than to an assignee or a fiduciary and, as such, he is not subject to tax liability as provided in 26 U.S.C. §§ 6012(b)(3) or (b)(4). *See In re Alan Wood Steel Co.*, 7 B.R. 697 (Bankr.E.D.Pa.1980).

■ Additionally, there was no assignment of the debtors' properties except as provided in the plan. The plan does not provide for the trust to file tax returns reflecting the sale of the properties in question or for the trust to pay taxes on those sales. If Congress had intended to hold a disbursing agent or contract trustee liable to file a tax return and to pay taxes, it could have explicitly provided for this in 26 U.S.C. §§ 6012(b)(3) and (b)(4) or elsewhere in the Internal Revenue Code. *Alan Wood Steel*, 7 B.R. at 700. This court lacks authority to extend 26 U.S.C. §§ 6012(b)(3) or (b)(4) beyond the clear import of their language. *See Greyhound Corp.*, 495 F.2d 863 and *Alan Wood Steel*, 7 B.R. 697.

■ The liquidating trustee and the trust are also not liable for any taxes that may be due and owing to the government because the trust is a grantor trust and, as such, it is not a taxable trust under the Internal Revenue Code. *See* Subpart E of Subchapter J, 26 U.S.C. §§ 671–79 and *Sonner*, 53 B.R. 859. Under 26 U.S.C. §§ 671–79, a grantor who has retained specified powers exercisable without the approval or consent of an adverse party is considered the owner of the trust and is taxed individually. *United States v. Buttorff*, 563 F.Supp. 450, 454 (N.D.Tex.1983), aff'd, 761 F.2d 1056, 1060–61 (5th Cir.1985). The retention of power is manifested by the grantor's or non-adverse party's ability to control the beneficial enjoyment of the corpus or the income therefrom, or to receive income from the trust. 26 U.S.C. §§ 675 and 677. An adverse party is defined as a party which has a substantial beneficial interest in the trust which would be adversely affected by the exercise or non-exercise of its powers regarding the trust. 26 U.S.C. § 672(a). The liquidating trustee is not an adverse party under the Internal Revenue Code. 26 U.S.C. Section 672(a). *See also Buttorff*, 563 F.Supp. 450 and Treas.Reg. §§ 1.672(a)–1(a), (a)–1(b).

Pursuant to 26 U.S.C. § 677(a), the grantor of a trust is treated as the owner if the income of the trust is "or, in the discretion of the grantor or a non-adverse party,

or both, may be" applied to discharge a legal obligation of the grantor. *Sonner*, 53 B.R. at 863; 26 U.S.C. § 677(a); Treas.Reg. § 1.677(a)–1(d). Here, the debtors are the grantors of the trust, pursuant to the confirmed plan. The debtors' property became the property of the bankruptcy estate upon the filing of the Chapter 11 petitions and that estate was transferred to the trust pursuant to the terms of the plan. The entirety of the trust—its corpus and any income earned therefrom—is required under the plan to be used to discharge the legal obligations of the debtors. Any remainder is required to be paid back to the discharged debtors.

Treas.Reg. § 1.677(a)–1(d) unequivocally states that a trust whose income is used to discharge a grantor's legal obligations is a grantor trust. Additionally, Treas.Reg. § 1.677(a)–1(d) specifies that if the grantor, or a non-adverse party may, in their discretion, use trust income to satisfy the grantor's legal obligations, the trust is a grantor trust. *See* Treas.Reg. § 1.677(a)–1(d) and 26 U.S.C. § 677(a).

For the trust to be considered a taxable entity, the trustee must have as one of his permitted powers discretion as to which of the grantor's legal obligations to satisfy. The liquidating trustee in this case has no such discretion. Under the plan and 11 U.S.C. § 1142(a) neither the liquidating trustee or the grantors/debtors possess the discretionary power to decide how to disburse the assets of the trust to satisfy the grantors/debtors' legal obligations. The confirmed plan delineates the exclusive method of disbursement to the creditors.

The *Sonner* case directly supports this analysis. In *Sonner*, the debtor's voluntary Chapter 11 proceeding resulted in a confirmed plan of reorganization which required the debtor to convey his interest in certain parcels of real estate to a creditors' trust. The creditors' trust provided for the liquidation of the real estate at specified prices for the benefit of the debtor's creditors, with any remainder to be conveyed back to the debtor. This is precisely what the confirmed plan in the instant case provided. Specifically, the creditors' trust in

*Sonner* required the liquidating trustee to hold and distribute the proceeds from the sale of the debtor's real estate in accordance with the terms of the confirmed plan. Like the plan herein, the creditors' trust in *Sonner* did not provide for the payment of taxes. The issue in that case was "whether the creditors' trust is the entity responsible for the payment of tax resulting from the sale of the parcels of real estate." *Sonner*, 53 B.R. at 860. The *Sonner* court noted that the intent of the debtor and his creditors, as is the case herein, was to use the trust as a vehicle simply for the purpose of liquidating the properties to pay creditors, and to return any excess to the debtor.

The *Sonner* court held that the creditor's trust was not responsible for the payment of a capital gains tax resulting from the sale of property. 53 B.R. at 866. The court held that the creditors trust was a grantor trust, as defined in Subchapter J of the Internal Revenue Code, and the grantor-debtor, as owner of the trust, was liable for the taxes. *Sonner*, 53 B.R. at 866. The Court agrees with and therefore adopts the reasoning found in the *Sonner* case thereby finding that the liquidating trustee is not liable for payment of federal income taxes, if any, that were incurred by the sale of the Miami Center and the Washington properties since the trust is a grantor trust and a non-taxable entity under the Internal Revenue Code. *Sonner*, 53 B.R. 859. *See also Stockton v. United States*, 335 F.Supp. 984, 986 (C.D.Ca.1971) (where the purpose of the trust is to extinguish the grantor's indebtedness, the grantor is treated as the owner of the trust for income tax purposes and the trust is not considered a taxable entity).

■ For the Court to conclude otherwise would be inconsistent with the recent ruling by the Eleventh Circuit Court of Appeals in *Miami Center Limited Partnership v. Bank of New York*, 838 F.2d 1547 (11th Cir.1988). The payment of the federal taxes would, of necessity, be an impermissible modification of the confirmed plan. *See* 11 U.S.C. 1127(b); *In re Northampton Corp.*, 59 B.R. 963, 968–69 (E.D.Pa.1984);

*In re Seminole Park & Fairgrounds, Inc.,* 502 F.2d 1011, 1014 (5th Cir.1974); *See In re Hayball Trucking, Inc.,* 67 B.R. 681, 684 (Bankr.E.D.Mich.1986); *See also Claybrook Drilling co. v. Divanco, Inc.,* 336 F.2d 697, 701 (10th Cir.1964); *In re At of Maine, Inc.,* 56 B.R. 55, 57 (Bankr.D.Me. 1985); *In re Heatron,* 34 B.R. 526 (Bankr. W.D.Mo.1983).

As noted by the court in *Miami Center Limited Partnership* when dismissing the appeal, it is legally and practically impossible to unwind the confirmation of this plan or to otherwise restore the status quo. The Court will not allow a "piecemeal dismantling" of a reorganization plan. *See In re AOV Industries, Inc.,* 792 F.2d 1140 (D.C.Cir.1986). The relief sought by the debtors and the government would require the complete dismantling of the substantially consummated plan, more than two and one-half years after its confirmation. A modification would require the liquidating trustee to recover millions of dollars already paid to creditors for redistribution on a pro rata basis. Additionally, the creditors voted on the plan and received payments under the terms of the plan based upon good faith reliance induced, in part, by the inaction of the government. It is simply impracticable, and may well nigh be impossible, to unwind the substantially consummated and confirmed plan.

In summary, the Court finds that the liquidating trustee is not responsible to file income tax returns or to pay income taxes, if any are due and owing, resulting from the sale of the Miami Center or the Washington properties.

A separate Final Judgment of even date has been entered in conformity herewith.